OPINION
Plaintiff-Appellant Wayne Forsyth filed this action in the Clark County Common Pleas Court claiming breach of contract, legal malpractice and misconduct in office against Defendant-Appellees Mark Feinstein, Lawrence J. Hofbauer, and Feinstein, Hofbauer 
Marshall, L.L.P. (collectively, "Appellees"). Feinstein and Forsyth entered a contract for legal services on February 21, 1997 in which Feinstein agreed to research the viability of a Civ.R. 60(B)(5) motion for Forsyth's Montgomery County domestic relations case. In consideration for this research, Forsyth was to pay Feinstein a flat fee of $2500. Further, Feinstein agreed in the contract that if he determined the Civ.R. 60(B)(5) motion was viable, he would draft and file it, in consideration for an additional $2500.
The parties do not dispute that Feinstein completed the research necessary to determine the Civ.R. 60(B)(5) motion was viable, and Forsyth paid him $2500 for this service. Thereafter, Forsyth paid Feinstein the second $2500 in order for him to draft and file the motion with the court.
During Feinstein's preparation of the motion, the parties discussed the foreclosure action which was pending against Forsyth in the Clark County Common Pleas Court. The action had been filed by Paula Hall Forsyth, who was held to be Forsyth's common law wife in the Montgomery County divorce action. She had filed the Clark County action to enforce the property judgment awarded in the divorce. Subsequently, Feinstein offered to enter an appearance on behalf of Forsyth in the Clark County action. There is no evidence that Forsyth objected to his representation. Feinstein's intent was to protect Forsyth's property until the Civ.R. 60(B)(5) motion could be filed and decided in the Montgomery County court.
Thereafter, Feinstein filed several pleadings and motions in the Clark County foreclosure case, including a motion to vacate summary judgment, leave to file an answer, and a reply memorandum in response to Plaintiff's memorandum contra. Following these filings, Forsyth filed a pro se motion for order and oral hearing in Clark County on June 11, 1997. In this motion, he stated: "Defendant is filing this motion to protect his rights at law so that any neglect or misconduct by his attorney cannot be imputed to the Defendant."
Immediately after learning of this pro se filing, Feinstein notified Forsyth that he intended to withdraw entirely from his representation. Feinstein explained that the pleading Forsyth filed hindered his ability to adequately represent him. Subsequently, Feinstein returned $2500 to Forsyth, which he refused to accept. This amount was promptly placed in Feinstein's IOLTA account and remains there today.
Following Feinstein's withdrawal from representation, Forsyth filed the Civ.R. 60(B)(5) motion in the Montgomery County case prose. The motion filed was based on the drafts prepared by the collaboration of both parties. The trial court overruled this motion, which Forsyth appealed. Thereafter, this court affirmed the trial court's decision. Forsyth subsequently appealed to the Supreme Court which declined jurisdiction to hear the case.
Next, Forsyth filed the instant action against appellees for breach of contract, legal malpractice, and misconduct in office. Judge Richard O'Neill was assigned to the case. On July 9, 1999, both Forsyth and the Appellees filed motions for summary judgment. On July 30, 1999, Judge Richard Parrott rendered a decision sustaining Appellees' motion for summary judgment and overruling Forsyth's motion for summary judgment. The case record contained no evidence of Judge Parrott's assignment to this case. Forsyth has appealed this decision raising the following two assignments of error:
 Appellant alleges when both parties present motions for summary judgment, by the record a genuine issue of material fact is disclosed by the record., Appellant alleges that a judgment rendered by a judge not assigned to the issue is void.
 I
We will first consider Forsyth's second assignment of error which alleges the judgment rendered below is void because Judge Parrott was not officially assigned to the case. The Ohio Rules of Superintendence provide for an "individual assignment system" outlining the process to assign cases to judges. In this regard, the rule states:
 As used in these rules, "individual assignment system" means the system in which, upon the filing in or transfer to the court or a division of the court, a case immediately is assigned by lot to a judge of the division, who becomes primarily responsible for the determination of every issue and proceeding in the case until its termination. All preliminary matters, including requests for continuances, shall be submitted for disposition to the judge to whom the case has been assigned or, if the assigned judge is unavailable, to the administrative judge.
Sup.R. 36(B)(1). This rule "clearly seeks to restrict case assignments in a manner that will eliminate whimsical transfers."Berger v. Berger (1981), 3 Ohio App.3d 125, 128.[1] Forsyth relies on two Eighth District cases for the proposition that all issues in a case must be determined by the original judge absent any notice in the record of reassignment to another judge. SeeRosenberg v. Gattarello (1976), 49 Ohio App.2d 87, 93-94;Zurowski v. Cuyahoga Cty. Bd. of Revision (Oct. 28, 1982), Cuyahoga App. No. 44537, unreported, p. 3. These cases held that the case record must show unavailability of the original judge and that a delay in ruling on the matter would be prejudicial before another judge may take any action. Id. However, both of these cases involved actions taken by judges within the same court without any notice of a transfer. There appeared to be no official record of the reassignment anywhere. This type of case reassignment is the focus of Sup.R. 36(B)(1).
On the other hand, the present case involved assignment of a visiting judge from another court to handle and conclude any proceedings occurring in the court during his period of assignment. The Ohio Constitution and the Rules of Superintendence allow for such temporary assignment of visiting judges. Specifically, the Constitution provides, "[t]he chief justice or acting chief justice, as necessity arises, shall assign any judge of a court of common pleas or a division thereof temporarily to sit or hold court on any other court of common pleas or division thereof * * *." Section 5(A)(3), Article IV, Ohio Constitution. This section further allows the Supreme Court to adopt rules to facilitate these temporary assignments. In this regard, a rule was adopted allowing the administrative judge in a court to "[r]equest, as necessary, the assignment of judges to the court or division by the Chief Justice of the Supreme Court or the presiding judge of the court." Sup.R. 4(B)(6). The rules do not
provide any further requirements for these assignments.
In the present case, the Clark County Clerk of Courts retained a time-stamped copy of the certificate of assignment for Judge Parrott which was signed by the Chief Justice of the Supreme Court on July 12, 1999. This certificate of assignment is sufficient to demonstrate the legitimacy of Judge Parrott's authority to handle any proceedings in the court for the weeks of July 26 through August 6, 1999.
Forsyth is correct when he states that Ohio courts are governed by the Ohio Rules of Superintendence. Since these rules, as well as the Constitution, allow for assignment of visiting judges "as necessary," and the Clerk's docket contained a valid certificate of assignment, the decision signed by Judge Parrott is not void or voidable. There are "Guidelines for Assignment of Judges" which indicate that a copy of the certificate of assignment should be placed in each case file handled by the visiting judge. (Feb. 25, 1994 and Mar. 25, 1994), available in 69 Ohio St.3d XCIX, CIV, ¶ 26. However, unlike the Rules of Superintendence, these guidelines are not binding on Ohio courts. Therefore, although it may be better practice for courts to place a copy of the certificate of assignment in each file handled by the visiting judge, failure to do so is not reversible error. Accordingly, Forsyth's second assignment of error is overruled.
 II
In his first assignment of error, Forsyth argued the trial court erred in sustaining summary judgment in favor of Appellees. For purposes of appeal, our review of the trial court's decision is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ.R. 56, the same as a trial court. According to Civ.R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
The moving party has the burden to establish that there is no genuine issue as to any material fact. Id. This burden can only be met by identifying specific facts in the record which indicate the absence of genuine issues of material fact. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. By establishing that the non-moving party's case lacks the necessary evidence to support its claims, the moving party has successfully discharged its burden. Id. at 289-90.
Once this burden has been met, the non-moving party then has a reciprocal burden as outlined in Civ.R. 56(E), which provides the "adverse party may not rest upon the mere allegations or denials of [the party's] pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." See id.
at 293. Civ.R. 56(E) provides if the non-moving party does not respond or outline specific facts to demonstrate a genuine issue of material fact, then summary judgment is proper. Id.
Forsyth contends that filing of cross-motions for summary judgment by itself indicates the record contains a genuine issue of material fact. We do not agree. In fact, by raising cross-motions for summary judgment, both parties have asserted there are no genuine issues of material fact, leaving us only to decide whether either party is entitled to judgment as a matter of law. Cleveland Home Improvement Council v. Bedford Hts. (1996),113 Ohio App.3d 814, 822; Durbin v. Ohio Bur. of Workers' Comp.
(1996), 112 Ohio App.3d 62, 65-66.
The trial court based its decision sustaining Appellees' motion for summary judgment on two factors: (1) Forsyth's failure to put forth any expert testimony to prove malpractice; and (2) his failure to show evidence of damages resulting from the malpractice. Forsyth argues that the complaint names three separate causes of action: breach of contract, misconduct in office, and malpractice, all of which should not be combined under the label of malpractice. Again, we disagree.
In order to determine the basis of Forsyth's cause of action, we must look at the facts surrounding his claim. Rumley v.Buckingham, Doolittle Burroughs (Sept. 1, 1998), Franklin App. No. 97APE09-1262, unreported, p. 2. In doing so, we find that all three claims Forsyth raises stem from Feinstein's withdrawal from representation. Therefore, all of these claims sound in legal malpractice, regardless of the labels he places on them. The Supreme Court has stated that malpractice involves "the professional misconduct of members of the medical profession and attorneys." Richardson v. Doe (1964), 176 Ohio St. 370, 372. Whether the malpractice is established as a breach of contract of employment or in tort, it still constitutes malpractice. Muir v.Hadler Real Estate Mgmt. Co. (1982), 4 Ohio App.3d 89, 90; Rumley,supra. Forsyth's attempt to label his claim as three separate causes of action does not relieve him of the burden to establish a claim for malpractice in order to recover any damages.
To establish a claim for malpractice, a plaintiff must show: "(1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." Krahn v. Kinney (1989), 43 Ohio St.3d 103, 105
(citations omitted). Forsyth has not demonstrated either of the latter two elements.
In order to prove breach of duty in legal malpractice, expert testimony must be provided, unless the alleged breach is within the ordinary knowledge of lay people. State v. Decker (1986),28 Ohio St.3d 137, 142; Holley v. Massie (1995), 100 Ohio App.3d 760,764. Forsyth alleges that Feinstein breached his duty to represent him in the Montgomery County divorce matter. Conversely, Feinstein contends that he properly withdrew from representation. Whether an attorney properly withdrew from representation of a client is not within the common knowledge of lay people. Therefore, expert testimony would be required in order to establish a breach of duty. On a summary judgment motion when expert testimony is required, if the moving party presents expert testimony and the other party fails to do so, summary judgment is proper for the party presenting the expert testimony. Georgeoffv. O'Brien (1995), 105 Ohio App.3d 373, 377-78.
Since cross-motions for summary judgment were filed in this case, the parties were both movants and non-movants. Feinstein submitted an affidavit of expert testimony that he represented Forsyth with reasonable diligence and the ability ordinarily exercised by members of the profession. This testimony discharged his burden under Civ.R. 56. In contrast, Forsyth failed to put forth any opposing expert testimony demonstrating a breach of duty by Feinstein. Therefore, he failed to meet both his burden as movant, and his reciprocal burden as non-movant under Civ.R. 56(E). As a result, summary judgment was proper in favor of Appellees.
Moreover, Forsyth did not present any evidence of damages that he suffered as a result of an alleged breach of duty by Appellees. Evidence of damages must be shown in a claim for legal malpractice. Vahila v. Hall (1997), 77 Ohio St.3d 421, syllabus. No such evidence was presented in this case. Feinstein's representation of Forsyth consisted of two parts, to research the viability of the Civ.R. 60(B)(5) motion for $2500, and to draft and file it for $2500. There is no dispute the first portion of the contract was successfully completed. As for second part, the draft was virtually completed and turned over to Forsyth at the time Feinstein withdrew from representation, along with all other documents Feinstein maintained in Forsyth's case. Further, Feinstein offered to return the second $2500, which Forsyth refused. Those funds are still located in Feinstein's IOLTA account. Finally, the motion prepared under the attorney-client relationship was filed pro se by Forsyth in the Montgomery County divorce case. Although this motion was overruled, there is no evidence the outcome would have been any different had Feinstein filed the motion, especially considering it was virtually the same motion he would have filed had his representation continued.
Based on the foregoing, summary judgment in favor of Appellees was proper due to Appellant's failure to present evidence on two out of three elements of legal malpractice. Accordingly, Appellant's first assignment of error is also overruled. Judgment affirmed.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
M. Wayne Forsyth
Gwenn S. Karr
HON. RICHARD O'NEILL
[1] At the time Berger was decided, the rule regarding the assignment system was Sup.R. 4, and had virtually the same language as Sup.R. 36(B)(1) today.